

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 8, 1949

Hon. Stewart W. Hellman
Criminal District Attorney
Tarrant County
Fort Worth, Texas

Opinion No. V-925

Re: The effect upon the tax exempt status of a charitable hospital of compensating the doctor in charge of anestheology, pathology or radiology on a fee or profit-sharing basis.

Dear Mr. Hellman

Your letter requesting our opinion relative to the captioned matter reads as follows:

"Request is made for an opinion from your Department as to whether the compensation on a fee basis or a profit-sharing basis of doctors in specialized fields of hospital service when paid by charitable hospitals would forfeit the ad valorem tax exemption for such institution.

"By way of back ground we refer to Section 2 of Article 8 of the Constitution of Texas authorizing the Legislature by general law to exempt from taxation all buildings used exclusively and owned by institutions of purely public charity; Article 7150(7), R.C.S., wherein the Legislature has exercised such authority; and the cases cited in your Opinion No. V-374 to the effect that in order to qualify for such tax exemption the property must be owned by the organization claiming the exemption and must be used exclusively by such organization.

"Larger hospitals have divisions of hospital service, usually composed of a Department of Anestheology, a Department of Pathology, and sometimes a Department of Radiology. These hospital services are furnished by the hospital under the direction of the doctor in charge of the respective department at the request of or on order of the attending physician. The hospitals make the charge for the anesthesia, the pathology and/or the radiology and the net proceeds therefrom go to the furtherance of the charitable work of the hospital, the doctors in

charge of such departments being on salaries paid
by the hospitals in most cases.

"However, these three fields of hospital ser-
vice are specialized fields, and to obtain the
finest doctors for this purpose and improve the
hospital service, it is usually necessary to employ
doctors who have certain high standings in certain
medical societies in their field. These societies
for the improvement of service and the maintenance
of high ethics sometimes require, and always prefer,
that its doctor members not serve on salaries but
be compensated by fees.

"Attorney General's Opinion No. 0-3572, approved
August 18, 1941, would cover the point that the em-
ployment of such doctors, either on a fee or salary
basis, would not violate the Medical Practice Act.
Attorney General's Opinion No. V-374, dated Septem-
ber 12, 1947, covers the point that such a physician
may use his own equipment and leave it in unused
space in the hospital, without forfeiting the ad
valorem tax exemption. But neither of the Opinions
referred to covers the point as to whether the em-
ployment of such doctor on a fee or profit-sharing
basis would forfeit the ad valorem tax exemption
otherwise enjoyed by charitable hospitals.

"Therefore, the question on which we would
like to have your opinion is whether charitable
hospitals, otherwise entitled to ad valorem tax
exemption under the Constitution and Laws of Texas,
would forfeit such ad valorem tax exemption by re-
munerating the doctor heads of their departments
of hospital service on (1) a fee basis, or (2) a
net profit-sharing basis -- instead of on a salary
basis. The fee basis mentioned would mean that
the hospital would agree with the pathologist that
instead of his receiving a salary, he would receive
a fee of a certain amount of money for each case
handled, or each service rendered, whether or not
the hospital was successful in collecting such fee
from its patient. The profit-sharing basis would
mean that from the gross fees collected by the hos-
pital from work performed by the particular de-
partment, the hospital would pay the expenses
attributable to such department, and the net pro-
ceeds or balance, would be divided on a percent-
age basis with the doctor head of such department.

"In view of the fact that a specific portion of the hospital is customarily assigned for the work of these hospital service departments, and in view of the fact that the doctor heads of such departments usually have personal demand and direction over such departments, the local hospitals are hesitant to accede to the wishes of the doctors in changing their remuneration from that of a salaried employee, lest in doing so the hospital subject itself to ad valorem taxes, which in turn would cause a substantial curtailment in charity services provided."

Section 2 of Article VIII of the Texas Constitution authorizes the Legislature to exempt from taxation institutions of purely public charity. In pursuance to such authority the Legislature exempted the real property of institutions of purely public charity. This legislation has been codified as Section 7, Article 7150, V.C.S., and reads as follows:

"All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

In Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex. Comm. App. 1924), it is stated:

"The constitutional requirement is twofold; the property must be owned by the organization claiming the exemption; it must be exclusively used by the or-

ganization, as distinguished from a partial use by
it, and a partial use by others, whether the others
pay rent or not."

Other cases applying this same rule are City of Houston v. Scot-
tish Rite Association, 111 Tex. 191, 230 S.W. 978 (1921); Morris
v. Masons, 68 Tex. 698, 5 S.W. 519 (1887).

As stated by the Court of Civil Appeals in Markham
Hospital v. City of Longview, 191 S.W. 2d 695 (Tex. Civ. App.
1945, error ref.):

"It appears from the holding by the Supreme
Court in the City of Houston v. Scottish Rite Assn.,
supra, Red v. Johnson, 53 Tex. 284, 288, and Benev-
olent & Protective Order of Elks v. City of Houston,
Tex. Civ. App., 44 S.W. 2d 488, that the relation-
ship of landlord and tenant or the payment of rents,
either or both are necessarily requisites to destroy
the exemption granted a purely charitable institu-
tion from taxes, . . . ."

The Court in City of Corpus Christi v. Fred Roberts
Memorial Hospital, 195 S.W. 2d 429 (Tex. Civ. App. 1946, error
ref. n.r.e,), held that a hospital was not being operated or
used exclusively for public charity where the hospital entered
into a contract by the terms of which a man and his wife agreed
to operate the hospital, taking such earnings of the hospital
over and above $300 each month as a salary. The court based its
holding on the ground that the contract created the relationship
of landlord and tenant with the result that the charitable cor-
poration itself was not actually operating the hospital.

In City of Longview v. Markham-McRee Memorial Hospital,
137 Tex. 178, 152 S.W. 2d 1112 (1941), the following facts were
before the court. Two doctors paid the hospital $100 per month
rent as part payment for office space. The doctors acted as house
physicians to take care of emergency cases and gave free treat-
ment to charity patients. Despite the fact that the presence of
a doctor at all times was necessary to the proper operation of
the hospital, the court held that the renting of office space was
a commercial and private transaction which resulted in a loss of
the tax exemption.

In Markham Hospital v. City of Longview, supra, the
court held that the hospital was deprived of its exemption from
taxation by reason of the fact that the hospital employed a lab-
oratory technician who performed laboratory tests for patients
in the hospital as requested by the physicians, but who also was
permitted to carry on a private business using the hospital
laboratory.

Hon. Stewart W. Hellman, page 5     V-925

We are assuming that the real property is owned by the charitable institution or institutions in question. In addition to being owned by the charitable institution, the property must be exclusively used by it. If by compensating the doctors for their services by fees or by contracting to pay them by a percentage of the income creates a landlord and tenant relationship or constitutes a renting or leasing of the premises, then the exemption would be lost. On the other hand, if the relationship of employer and employee still exists, then the use of the property by the doctors will constitute the use by the institution. It is a rather common practice in these modern times to recompense employees by either a fixed salary, fees, or on an income-sharing basis, or by two or all of said methods.

It is therefore our opinion that the mere payment by a charitable hospital of a doctor in charge of anestheology, pathology, or radiology by fees or on an income-sharing basis, instead of a fixed salary, does not destroy the relationship of employer and employee and the institution would not by reason thereof lose its tax exempt character.

### SUMMARY

A charitable hospital will not lose its tax exempt status by compensating its doctors in charge of anestheology, pathology, or radiology on a fee or income-sharing basis instead of a fixed salary, as the relationship of employer and employee will not thereby be destroyed. Tex. Const. Art. VIII, Sec. 2; Art. 7150, Sec. 7, V.C.S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/ W.V. Geppert
W.V. Geppert

WVG/mwb/wc

APPROVED
s/Joe R. Greenhill
FIRST ASSISTANT
ATTORNEY GENERAL